COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Overton
Argued at Richmond, Virginia


MARCUS ANTRONIEL LANGSTON
                                         OPINION BY
v.        Record No. 1008-97-2   JUDGE NELSON T. OVERTON
                                       SEPTEMBER 8, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Walter W. Stout, III, Judge

           Patricia P. Nagel, Assistant Public Defender
           (David J. Johnson, Public Defender, on
           brief), for appellant.

           Marla Graff Decker, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.



     Marcus Antroniel Langston (defendant) appeals his

convictions of possession of cocaine with intent to distribute,

in violation of Code § 18.2-248, and simultaneous possession of

cocaine and a firearm, in violation of Code § 18.2-308.4.  He

contends:  (1) the stop and search of his person by police were

not supported by reasonable suspicion and, therefore, any

evidence obtained as a result thereof was inadmissible, (2) the

evidence was insufficient to support the conviction of cocaine

possession with intent to distribute or simultaneous possession

of cocaine and a firearm because the evidence was insufficient to

prove he possessed the cocaine or he intended to distribute it

and (3) the Commonwealth failed to prove the handgun he carried

was functional.  Because we hold defendant's stop and search were

supported by reasonable suspicion and the evidence is sufficient

to support both charges, we affirm.

## I.  Facts

Police Officers Hererra, Albright and Peace were on uniformed bicycle patrol in the 700 block of West Clay Street in Richmond on November 1, 1996.  This area was known to the police as a drug "hot spot."  The officers saw defendant standing with a group of men in the yard of an abandoned house that was posted with a "no trespassing" sign.  The officers followed defendant down an alley where they peppered him with questions regarding his identity and destination.  Finally, defendant stopped and turned to speak with the police officers.  When he did they surrounded defendant; two officers stood in front of him and one behind, using their bicycles to block his path.

Defendant told the officers he was going to a store to buy food and then he was going to see his "girl."  While they questioned him, the officers noticed that defendant "touched" or "patted" his right side.  He wore a long coat which extended to his knee so the officers could not see what he was touching. When asked whether he was carrying drugs or firearms, defendant responded in the negative.  Fearing for their safety, Officer Albright conducted a pat-down frisk of defendant's clothing and found a handgun in the right side of his pants.  They arrested defendant, searched him incident to the arrest and handcuffed him.  They found one hundred and twenty-eight dollars in cash on defendant but nothing else.  A police van then arrived to

transport defendant to a police station.

Prisoners are transported in the van's side compartment. The compartment is a small space with metal walls and floor, having only a hard wooden bench to sit upon. The police officer who drove the van searched "every little nook and cranny" of the compartment before defendant was placed within it. Officer Herrera also searched the compartment. Defendant was the only occupant of the compartment. He was transported to a police station and removed from the van. Immediately after he was removed, the driver saw a bag sitting on the floor of the compartment. The bag contained .758 grams of cocaine wrapped in six separate containers.

At trial, defendant's motion to suppress the evidence was denied. The trial court first ruled that the encounter between police and defendant was consensual, but then ruled the officers conducted a Terry stop supported by reasonable suspicion because defendant was on abandoned property and his conduct gave rise to fear he possessed a gun. The trial court also ruled defendant constructively possessed the cocaine because, even if not found on his person, the circumstances proved he discarded the cocaine while he was in the police van.

## II.  Police-Citizen Encounter

Defendant claims he did not consent to being stopped and searched by police. He argues the investigative behavior of the police amounted to a Terry stop. See Terry v. Ohio, 392 U.S. 1

(1968). Analysis of this confrontation "is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." Michigan v. Chesternut, 486 U.S. 567, 573 (1988). However, in Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1955), this Court summarized the three types of police-citizen encounters:

> Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause.

(Internal quotes and citations omitted). We must determine what kind of encounter took place and look to the legal foundation which may have supported it.

The trial court's first ruling, that the encounter was consensual, was erroneous. Police need not physically drag a suspect to a halt before an encounter will be characterized as a stop. See Brown v. Texas, 443 U.S. 47, 50 (1979) (holding seizure occurred when police stopped car in front of suspect and asked him to identify himself). The circumstances of the encounter may indicate, even without physical restraint, a suspect is not free to leave. In United States v. Mendenhall, 446 U.S. 544, 554 (1980) (citing Terry, 392 U.S. at 19 n.16), the Supreme Court held as follows:

- 4 -

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Our own Supreme Court of Virginia recently held in Parker v. Commonwealth, 255 Va. 96, 103, 496 S.E.2d 47, 51 (1998), that a suspect was seized for purposes of the Fourth Amendment in circumstances even less intimidating than those at bar. In that case, Mr. Parker was followed by an officer in a police cruiser. When Mr. Parker entered private property, the officer followed him. Finally, the officer stopped, exited his cruiser and began to question Mr. Parker. These "acts constituted a show of authority which restrained the defendant's liberty." Id.

In the instant matter, defendant was pursued by not one but three police officers. They were close enough to him to carry on a conversation. They harassed him with repetitive and redundant questions. When defendant stopped to confront them, he was surrounded. Because no reasonable person would have felt free to leave in these circumstances, we hold defendant was seized.

### III. Reasonable Suspicion

"In order to justify such a seizure, an officer must have a `reasonable and articulable suspicion of criminal activity on the part of the defendant.' . . . A general suspicion of some criminal activity is enough, as long as the officer can, based on

- 5 -

the circumstances before him . . . articulate a reasonable basis for his suspicion."  Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (citations omitted).  The function of the appellate court is to reweigh de novo determinations of reasonable suspicion and probable cause.  See Ornelas v. United States, 517 U.S. 690, 699 (1996).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas, 517 U.S. at 699).

The police officers saw defendant standing and walking upon property they knew was abandoned and posted "no trespassing." Defendant's actions gave the officers probable cause to believe he was committing a Class 1 misdemeanor in violation of Code § 18.2-119.  Were the police so inclined they could have not only stopped and searched defendant, but arrested him.  See Jordan v. Commonwealth, 207 Va. 591, 596, 151 S.E.2d 390, 394 (1966) ("[A] police officer may arrest without a warrant when a misdemeanor is committed in his presence, and . . . when a person without authority of law goes upon the lands, buildings or premises of another after having been forbidden to do so by a sign.").  Accord Sullivan v. Commonwealth, 210 Va. 201, 203, 169 S.E.2d

577, 579 (1969).

Defendant argues reasonable suspicion or probable cause may not be based upon a crime different from that which the police are investigating. In other words, because defendant was seen committing a trespass police had no reasonable suspicion to stop and ask him who he was, where he was going and whether he carried drugs or weapons. This argument is untenable. Courts have consistently upheld convictions for crimes which did not flow from the activity which formed the basis for the initial reasonable suspicion of criminal activity. See, e.g., Ohio v. Robinette, 519 U.S. 33 (1996) (defendant stopped for speeding was arrested for possession of marijuana); New York v. Class, 475 U.S. 106 (1986) (defendant stopped for having a cracked windshield on vehicle was convicted of firearm possession); Jordan, 207 Va. at 596, 151 S.E.2d at 394 (affirming conviction of grand larceny after defendant was seen trespassing and was initially arrested for "vagrancy"); Jha v. Commonwealth, 18 Va. App. 349, 444 S.E.2d 258 (1994) (defendant investigated for trespassing and burglary was convicted of fraudulently obtaining telephone services). When defendant was seen on abandoned property posted with a "no trespassing" sign the police had reasonable suspicion to stop and question defendant. Defendant's actions of touching or patting his right side, coupled with his presence in a high crime area, provided the reasonable suspicion defendant was armed and dangerous. Therefore, the subsequent

frisk for weapons was lawful.  See Troncoso v. Commonwealth, 12 Va. App. 942, 945, 947, 407 S.E.2d 349, 350-51, 352 (1991) (apprehension of dangerousness provided by defendant's "fidgety," nervous and sweating behavior).  The trial court did not err by refusing to suppress the evidence.

IV.  Sufficiency of the Evidence

Defendant next contends the evidence was insufficient to support either his conviction of possession of cocaine with intent to distribute or possession of a firearm while simultaneously possessing cocaine.  When the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  We may not disturb the convictions unless they are plainly wrong or unsupported by the evidence.  Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

A.  Constructive Possession of Cocaine

The cocaine attributed to defendant was found in the passenger compartment of the van in which defendant was transported.  The Commonwealth admits the police found no drugs on defendant's person when they searched him incident to arrest.  Therefore, the Commonwealth's theory of the case relies upon constructive possession.  "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence

- 8 -

of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).

"Although mere proximity to the drugs is insufficient to establish possession, and occupancy of [a] vehicle does not give rise to a presumption of possession, Code § 18.2-250, both are factors which may be considered in determining whether a defendant possessed drugs." Josephs v. Commonwealth, 10 Va. App. 87, 100, 390 S.E.2d 491, 498 (1990) (en banc). In the instant matter, the compartment was searched immediately prior to defendant's placement within it. He was the sole occupant for the entire trip to the police station. He was taken out of the compartment and the same officer who had previously searched it noticed the bag on the floor.

"The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia in the [vehicle]." Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (en banc). The evidence, taken as a whole, was sufficient to support the trial court's conclusion defendant carried the bag into the van and attempted to discard it there rather than risk discovery at a later time.

## B. Intent to Distribute

Defendant was not convicted of simple possession of cocaine, but of possession of cocaine with intent to distribute. "Because direct proof of intent is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "Possession of a small quantity creates an inference that the drug is for personal use." White v. Commonwealth, 25 Va. App. 662, 668, 492 S.E.2d 451, 454 (1997) (en banc) (citations omitted). However, other circumstances may indicate intent despite the paucity of drugs. See Colbert v. Commonwealth, 219 Va. 1, 244 S.E.2d 748 (1978). Defendant was found with a relatively large amount of cash on his person. The trial court could have inferred this money was the fruit of several drug transactions. See id. at 4, 244 S.E.2d at 749. The cocaine was packaged in several small bags or folds of tinfoil, making it easier and more profitable to sell. See id. Defendant was also found with a handgun, a common tool of the drug-dealer's trade. See Dixon v. Commonwealth, 11 Va. App. 554, 557, 399 S.E.2d 831, 833 (1991). Finally, defendant told police and the trial court he did not use drugs, a fact substantiated by a lack of drug usage paraphernalia found on his person. The circumstances taken as a whole provide sufficient evidence to prove defendant possessed his cocaine with the intent to distribute it.

## C. Possession of a Firearm

Defendant contends he cannot be found guilty of possession of cocaine while simultaneously possessing a firearm unless the Commonwealth proved the firearm was in working order. The case of Timmons v. Commonwealth, 15 Va. App. 196, 201, 421 S.E.2d 894, 897 (1992), is directly on point. In Timmons, the defendant was found with a pistol which lacked a clip or magazine with which to hold ammunition. The pistol was, therefore, completely inoperable. Yet this Court found the policy supporting enactment of Code § 18.2-308.4 demanded the definition of "firearm" include firearms that are not capable of firing a projectile at the time of seizure.

Even if we were inclined to stray from this rule, defendant's pistol provides infertile ground to do so. His nine-millimeter pistol included a loaded clip of ammunition. A police officer testified he had examined the weapon and it looked to be in "good working condition." Further, defendant testified he carried the weapon for protection. These facts sufficiently proved the weapon was functional.

## V. Conclusion

Because the police had reasonable suspicion defendant was engaged in criminal activity and he was armed and dangerous, we hold they did not violate defendant's Fourth Amendment liberties when they stopped and searched him. The evidence thus obtained is sufficient to support his convictions. Therefore, his convictions are affirmed.

Affirmed.