# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Donald L. Bowen

June 30, 2000

Case No. 99-325

BY JUDGE EDWARD L. HOGSHIRE

In this criminal prosecution for robbery, Defendant has filed a fourth motion to suppress evidence arising out of an allegedly illegal seizure. After reviewing the briefs and conducting an *ore tenus* hearing, and for the reasons set forth below, the Court denies Defendant's motion.

## Statement of Facts

On June 18, 1999, Officer P. J. Best was on an ordinary tour of duty as a patrol officer when he monitored a dispatch call to two other officers, Officer Webster and Officer Graziano. Officer Best described the content of the call: "two black males involved in drug dealing, one being tall, dark-skinned, wearing a dark navy suit; the other one being smaller, lighter-skinned, wearing an olive sweater and a white T-shirt." (Tr. P. 14, lines 14-18.) Officer Best responded to the call and arrived at the scene. Officers Webster and Graziano had arrived shortly prior to Best's arrival. The Defendant, Donald Bowen, and another man, both matching the description given in the dispatcher's call, walked by Officer Best in his parked car. Officer Best walked in the same direction as the subjects and then called out to them, in a "speaking" tone, "not very loud," (Tr. P. 21, lines 20-23), saying "Excuse me, Sir. Would you mind talking to me?" (Tr. P. 20, line 24.) The Defendant stopped and turned around and said that he would talk to the officer. The other man continued to walk away. Officer Best told the Defendant the nature of the call to which he

was responding, including the detailed description of the two males. The Defendant remarked that it was not him; that he was not involved in any drug dealing. The officer responded: "Well, that's good. I like to hear that kind of thing. I'd rather find out that you're not involved in any type of drug dealing than to find out that you are." (Tr. P. 23, lines 17-20.) The officer asked Bowen for his name, date of birth, and social security number. The Defendant gave him this information and the officer wrote it down. The officer then asked and the Defendant consented to a search. The officer felt something like paper inside the Defendant's sweatpants. He asked the Defendant what the item was and the Defendant told him that it was a check that belonged to his wife. The officer asked if he could take the envelope out and Bowen consented. The envelope contained a picture ID card and a government check. The Defendant then asked if he could leave, and upon receiving permission to depart, walked down the street.

The officer, after giving Bowen permission to leave, called the police service division regarding any outstanding warrants for Bowen. The officer learned that there was an outstanding *capias* for the Defendant, who was still in the area, and arrested him.

Defendant now alleges that the initial stop was without legal basis or it was not premised on a reasonable, articulable suspicion and was conducted without his consent.

### Discussion of Authorities

It is clear that the pivotal case shaping the Court's analysis here is *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997), which lists three types of police-citizen confrontations: (1) consensual encounters which do not implicate the Fourth Amendment, *Payne v. Commonwealth*, 14 Va. App. 86, 88 (1992), (2) brief investigatory stops, commonly called "Terry" stops, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), which must be based on reasonable, articulable suspicion that criminal activity is occurring, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1939), and (3) "highly-intrusive, full-scale arrests" or searches which must be based on probable cause to believe that a crime has been committed by the suspect. *Id.* The Commonwealth argues that the encounter between Officer Best and Bowen was consensual and of the first category. The Commonwealth thus contends that the officer did not "seize" the Defendant in violation of the Fourth Amendment. The Defendant claims that when Officer Best told him that he had been specifically identified as a person involved in a crime, the encounter became a "Terry" stop of the second category, and the officer's

actions constituted a "seizure." Defendant argues that without reasonable or articulable suspicion, the officer's "seizure" violated the Fourth Amendment.

The *McGee* case contained facts quite similar to those of this case. 25 Va. App. at 196-97. In *McGee,* three officers "immediately" approached the defendant, who was sitting on the porch of a store. *Id.* at 196. One of the officers could not remember whether the defendant matched the reported description. *McGee,* 25 Va. App. at 196. This officer approached the Defendant and told him that "I had received a call that [he] was on the corner selling drugs and [that he] matched the description." *Id.* The officers said that the defendant was free to leave, but they did not expressly inform him of such. *Id.* The officers did not block the defendant's path in any direction, nor did they draw their weapons. *Id.* The officers then requested permission to conduct a pat down "to make sure he didn't have any weapons on him." *Id.* at 197. The defendant agreed and the officers did not find any weapons, but upon asking him to open his clenched fist, discovered cocaine and other contraband. *Id.* The officers arrested the defendant and found more cocaine. *Id.* The Court of Appeals reversed the trial court, finding that they should have sustained a motion to suppress the evidence of cocaine "because it was seized in the illegal search of the defendant." *Id.* at 196.

One factor that the Court of Appeals considered in deciding whether a reasonable person would have felt free to leave was the officer's statement to the defendant explaining that he was suspected of a crime. *McGee,* 25 Va. App. at 200. The court quoted *Florida v. Bostick,* 501 U.S. 429, 435, 111 S. Ct. 2382, 2386 (1991), stating that when the police inform an individual that they have received information that he or she is suspected to be engaging in criminal activity, the police "convey a message that compliance with their requests is required." *McGee,* 25 Va. App. at 200.

However, the *McGee* court held that informing an individual that he was suspected of committing a crime was one of several significant factors to consider among the "totality of circumstances" when determining whether a reasonable person would have felt free to leave. *Id.* In *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S. Ct. 1975 (1988), *quoted in Langston v. Commonwealth,* 28 Va. App. 276, 281-82 (1998), the U.S. Supreme Court emphasized that analysis of the police-citizen encounter cannot be cut and dry because it must "assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." Other circumstances to consider when determining whether police conduct constituted a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with

the officer's request might be compelled." *Langston*, 28 Va. App. at 283. In *Langston*, the court emphasized several factors to be weighed in determining whether a reasonable person would have felt free to leave under the circumstances, and thus, whether the defendant was seized; there, the defendant was pursued "by not one but three police officers . . . close enough to him to carry on a conversation . . . [who] harassed him with repetitive and redundant questions . . . [w]hen [he] stopped to confront them, he was surrounded." *Id.* at 283.

The circumstances of *McGee* and *Langston* differ in significant ways from this case. Comparing the case at bar with these earlier cases, the Court finds that Officer Best did not "seize" the Defendant under the *McGee* and *Langston* definition. In both *McGee* and *Langston*, not one, but three officers confronted the suspect. In *McGee*, 25 Va. App. at 197, all three officers converged on the defendant, and in *Langston*, 28 Va. App. at 280, all three officers pursued the defendant and used their bikes to surround him and block his passage. In this case, Officer Best was the only officer who questioned the Defendant and conducted the preliminary encounter which resulted in Bowen's revealing his identity and consenting to be searched on a limited basis. Officer Best approached Bowen face-to-face, alone at first, with the second officer following later, and the third officer not appearing until after Bowen had given his identification information. Though the other officers were close by, they were silent during the conversation between Officer Best and Bowen.

Another difference between *McGee* and *Langston* and this case exists in the manner the defendants were questioned. In *McGee*, the Appellate Court held that the officer's opening statement identifying the defendant as the subject of their drug investigation would lead a reasonable person to believe that he or she was not free to leave. 25 Va. App. at 201. In *Langston*, the officers pursued the defendant and "peppered" him with harassing and repetitive questions before he stopped and turned to speak to the officers. 28 Va. App. at 280, 283. In contrast, here, Officer Best first asked Bowen in a non-threatening, speaking tone of voice: "Excuse me, Sir. Do you mind talking to me?" (Tr. P. 20, line 24, P. 21, lines 20-25.) It was not until after Bowen freely consented to converse with the officer that the officer told him that he matched the description of a person alleged to have been dealing drugs. After the Defendant denied being the person so alleged, Officer Best asked him for his name and social security number, which Bowen readily provided. The Defendant's identification led to his subsequent arrest on the outstanding *capias*.

The most salient fact here, one that does not appear in *McGee* and *Langston*, is the telling behavior of Bowen's companion, who fit the description of the other suspect in the dispatch. This man chose to ignore the officer's request to speak with him and continued walking. He did not run nor feel compelled to answer the inquiries, but rather continued on his way. Officer Best did not attempt to stop the companion or call out to him in any way. Bowen observed that his companion was able to ignore the officer without any consequences. The companion's behavior is strong evidence that Bowen, or any reasonable person, clearly recognized that he was free to choose whether or not to speak to the officer. Police may engage in consensual encounters with citizens in which "[a] reasonable person would feel free 'to disregard the police and go about his business'." *Florida v. Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386, *quoted in Reittinger v. Commonwealth*, 260 Va. 232 (2000). The actions of the Defendant's companion are probative of the fact that a reasonable person in the same situation as Bowen could, and did, feel free "to disregard the police and go about his business." The reaction of Bowen's companion, judged in "totality" with the other surrounding circumstances, establishes that Bowen's choice to participate was truly consensual. The other circumstances: the conversational, back and forth nature of the exchange between the officer and the Defendant, the absence of any touching prior to consent, the absence of a drawn weapon, the lack of participation by other officers, all suggest that a reasonable person would have felt free to leave.

This case is closely aligned to the consensual encounter of *Johnson v. Commonwealth*, Record No. 0878-99-1, 2000 Va. App. LEXIS 170 (decided March 7, 2000). In *Johnson*, the officer first approached the defendant and asked to speak with him. 2000 Va. App. LEXIS 170 at *9. The defendant agreed, and in response to the officer's request, "voluntarily" handed the officer his identification card. The officer then requested and the defendant consented to a pat-down frisk. *Id*. The *Johnson* court, 2000 Va. App. LEXIS 170 at *9, quoted *Payne v. Commonwealth*, 14 Va. App. 86, 88 (1992), to explain that "a consensual encounter occurs when police officers approach persons in public places to ask them questions, provided a reasonable person would understand that he or she could refuse to cooperate. [Internal quotations and citations omitted.] Consensual encounters 'need not be predicated on any suspicion of the person's involvement in wrongdoing, and remain consensual as long as the citizen voluntarily cooperates with the police'." *Payne*, 14 Va. App. at 88.

The case at bar more resembles *Payne* and *Johnson*, than *McGee* and *Langston*. *McGee* and *Langston* were not consensual encounters from the

onset. Neither of the defendants in those cases consented to the conversation before the officers began interrogating. In *McGee*, without first asking the defendant if he agreed to answer questions, the officer immediately opened the exchange by telling the defendant that he matched the description of the reported individual who was selling drugs. In *Langston*, the defendant had been trying to walk away, but the officers pursued and badgered him with repeated questions before he felt compelled to acknowledge them. In this case, the officer first asked Bowen if he could speak with him. In addition, Bowen, seeing his friend walk on with impunity, nevertheless chose to willingly speak with the officer. The Defendant had already consented to answer the officer's questions when Officer Best informed Bowen that he matched the description given in the dispatcher's call. The fact that Officer Best told Bowen that he matched the description of a person under criminal suspicion cannot alone transform this consensual encounter into an illegal seizure.

## Conclusion

For the above stated reasons, the Court finds that Bowen and Officer Best had a consensual encounter and denies Defendant's Fourth Motion to Suppress.