COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


GLENN LAVELLE MOSLEY

MEMORANDUM OPINION[*] BY
v.    Record No. 1207-00-1      JUDGE ROBERT P. FRANK
MAY 29, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Alan E. Rosenblatt, Judge

Ben Pavek, Assistant Public Defender, for
appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Glenn Lavelle Mosley (appellant) was convicted in a bench

trial of possession of cocaine in violation of Code § 18.2-250.

On appeal, he contends the trial court erred in denying his motion

to suppress.  Finding no error, we affirm the conviction.

I.   BACKGROUND

On December 19, 1998, Detective Dan Lindemeyer and Officer

David Banks of the Virginia Beach Police Department were

conducting surveillance of an apartment building in the 3700 block

of Windlass Circle.  The property was posted as a no-trespassing

area and private property.  Detective Lindemeyer testified that he

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

was working as a security guard for F & W Management, the owner of the apartment complex, that evening. When the officers observed appellant coming from the hallway of 3704 Windlass Circle, they realized they did not recognize him as a resident of the property.

The officers approached appellant and asked if they could speak with him. The officers did not ask appellant to stop, rather he stopped voluntarily. Detective Lindemeyer testified that he asked appellant if he was a resident of the property. Appellant responded that he was not a resident of the property but was there visiting a friend. Detective Lindemeyer then asked appellant if he had identification. When appellant indicated he did not have identification, Detective Lindemeyer asked for his name, date of birth, and Social Security number so the officers could determine whether appellant was included on the list of persons banned from the apartment property. Appellant provided the information voluntarily. Detective Lindemeyer testified that he wrote down the information and gave it to Officer Banks. Officer Banks compared appellant's information to the "ban list," and he then radioed in to verify appellant's personal information and determine whether there existed any outstanding warrants for appellant. Officer Banks did not face appellant while he spoke on the radio. Appellant was not on the "ban list."

Detective Lindemeyer testified that while Officer Banks was running the checks on appellant's information, he continued to talk with appellant and asked appellant if he had any kind of

-

drugs or weapons on his person. Appellant responded in the negative, and Detective Lindemeyer then asked for permission to search appellant. Appellant responded, "I don't know why, but go ahead." During the search, Detective Lindemeyer found crack cocaine in appellant's inner jacket pocket. Detective Lindemeyer testified he then placed appellant in custody. Neither officer handcuffed appellant, drew a weapon, or otherwise placed appellant in custody until after the cocaine was discovered.

Detective Lindemeyer testified that throughout the encounter he spoke to appellant in a conversational tone of voice and did not elevate or raise his voice. He stated he did not use strong language or "cuss words." Detective Lindemeyer also testified that he and Officer Banks had flashlights but they did not shine their lights on appellant because the streetlights provided sufficient lighting to see that appellant's hands were outside of his pockets.

After hearing evidence on the suppression motion, the trial judge found, "[I]t was not a seizure under the circumstances that existed in the case and that it was a proper contact with the police and it was consensual . . . ."

## II.  ANALYSIS

> On appeal from a trial court's denial of
> a motion to suppress, we must review the
> evidence in the light most favorable to the
> Commonwealth, granting to the Commonwealth
> all reasonable inferences fairly deducible
> from it. Commonwealth v. Grimstead, 12 Va.
> App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

-

> The findings of the trial court will not be disturbed unless plainly wrong or without evidence to support them.  See Mier v. Commonwealth, 12 Va. App. 827, 828, 407 S.E.2d 342, 343 (1991).  When reviewing the trial court's denial of a defendant's motion to suppress evidence, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quotation marks and citations omitted).

Debroux v. Commonwealth, 32 Va. App. 364, 370-71, 528 S.E.2d 151, 154, aff'd en banc, 34 Va. App. 72, 537 S.E.2d 630 (2000).

> "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

"Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations:  (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops,

-

and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions . . . .'" Washington v. Commonwealth, 29 Va. App. 5, 10, 509 S.E.2d 512, 514 (1999) (en banc) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)).

> A consensual encounter occurs when police officers approach persons in public places "to ask them questions," provided "a reasonable person would understand that he or she could refuse to cooperate." United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (quoting Florida v. Bostick, 501 U.S. 429, 431, 111 S. Ct. 2382, 2384, 115 L.Ed.2d 389 (1991)); see also Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989). Such encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing," and remain consensual "as long as the citizen voluntarily cooperates with the police." Wilson, 953 F.2d at 121.

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992).

> "[A] person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained. . . .
>
> . . . Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of

-

voice indicating that compliance with the officer's request might be compelled."

Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992) (quoting United States v. Mendenhall, 446 U.S. 544, 553-54 (1980)).

>"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.  Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification."

Id. at 196-97, 413 S.E.2d at 648 (quoting Royer, 460 U.S. at 497).

"Voluntarily responding to a police request, which most citizens will do, does not negate 'the consensual nature of the response' even if one is not told that he or she is free not to respond."  Grinton v. Commonwealth, 14 Va. App. 846, 849, 419 S.E.2d 860, 862 (1992) (quoting I.N.S. v. Delgado, 466 U.S. 210, 216 (1984)).  "[T]he subjective beliefs of the person approached are irrelevant to whether a seizure has occurred."  United States v. Winston, 892 F.2d 112, 116 (D.C. Cir. 1989) (citation omitted).

Appellant contends he was "seized" without a showing of probable cause or reasonable suspicion.  We disagree and find that the encounter between appellant and the officers was consensual from inception because appellant consented to the search of his

-

person that resulted in the discovery of the cocaine in his pocket.

Appellant argues our decision in McGee, 25 Va. App. 193, 487 S.E.2d 259, applies. We disagree. In McGee, Officer Loperl received a radio dispatch that a "black male wearing a white t-shirt, black shorts, and white tennis shoes was selling drugs on a corner near 5001 Government Road in Richmond." Id. at 196, 487 S.E.2d at 260. Within minutes, Officer Loperl and two other officers arrived at 5001 Government Road in marked police vehicles. Id. The officers approached McGee and a female who were sitting on a porch in front of a store. Id. McGee and the woman were the only people in the vicinity. Id. The officers did not observe McGee's activity prior to approaching him, and Officer Loperl testified he did not know whether McGee was wearing the clothing described in the dispatch. Id. Officer Loperl approached McGee and told him that the police had received a report that he was selling drugs on the corner and that he matched the description of the person described as selling the drugs. Id. Officer Loperl testified that McGee was free to leave but stated that the officers did not expressly communicate that to McGee. Id. Officer Loperl also testified that the officers did not block McGee's path or draw their weapons. Id.

Then, Officer Loperl asked McGee if he could pat him down to check for weapons. Id. at 197, 487 S.E.2d at 261. The officer testified that he used "the same tone of voice he was using in

-

court" to ask the question.  Id.  McGee "responded by standing up and extending his arms in front of him with both fists clenched."  Id.  Finding no weapons on appellant's person, Officer Loperl stated he asked McGee to open his fists because he "believed [McGee] could have been holding a 'small pocket knife' or 'a razor . . . .'"  Id.  Officer Loperl stated he asked, not told, McGee to open his hands.  Id.  When McGee opened his fists he was holding money, a torn ziplock bag, and "'a little piece of white substance.'"  Id.  Officer Loperl arrested McGee and found twenty-five bags of crack cocaine during a search incident to the arrest.  Id.

Sitting en banc, we held that the encounter between McGee and the officers was not consensual because "[w]hen the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police 'convey a message that compliance with their requests is required.'"  Id. at 200, 487 S.E.2d at 262.  We held that Officer's Loperl's statement to McGee did not convey the message that the officers were conducting a general investigation of reported drug dealing.  Id. at 201, 487 S.E.2d at 263.  Rather, McGee specifically was identified as the subject of the investigation.  Id.  We additionally noted that three officers, in marked police vehicles, confronted McGee and that the trial court, which had the opportunity to evaluate Officer Loperl's tone of voice, found that a seizure occurred.  Id.  Thus, we concluded

-

that "[t]he officers did not by their words or actions suggest that [McGee] was free to leave."  Id.

In this case, when the officers approached appellant, Detective Lindemeyer spoke with him in the of tone of voice he used in court.  The detective testified he did not use strong language or "cuss words."  The officers did not accuse appellant of a crime.  The detective testified appellant stopped voluntarily and provided his personal information voluntarily.  Neither officer handcuffed appellant, drew a weapon, or otherwise placed appellant in custody.  In fact, while Detective Lindemeyer spoke with appellant, Officer Banks had his back to appellant while using the radio to confirm appellant's information and check for outstanding warrants.

We, therefore, find that the encounter was unaccompanied by any "'coercion or show of force or authority by the officer . . . that would cause a person . . . reasonably to have believed that he or she was required to comply' and 'not free to leave.'"  Wechsler, 20 Va. App. at 169, 455 S.E.2d at 747 (citation omitted).  Thus, we find no error in the trial court's ruling that the encounter was consensual and was not a seizure under the Fourth Amendment.

The Supreme Court of Virginia's recent decision in Parker v. Commonwealth, 255 Va. 96, 496 S.E.2d 47 (2000), does not alter our conclusion.  In Parker, a police officer, driving a marked police vehicle, followed Parker for approximately forty

-

feet on private property after it became clear that Parker was trying to avoid the police.  Id. at 99, 496 S.E.2d at 49.  The officer stopped the car where Parker was standing.  Id.  In finding a seizure, the Supreme Court distinguished its holding in Baldwin, 243 Va. 191, 413 S.E.2d 645, because the officer in Baldwin called the suspect to the police cruiser rather than following him.  Id. at 103, 496 S.E.2d at 51.  In Parker, the Court stated, "Without question, Officer Kurisky's acts constituted a show of authority which restrained the defendant's liberty."  Id.

Unlike Parker, in this case, the police did not follow appellant nor did appellant try to avoid the officers by changing direction and walking away.  As in Baldwin, appellant did not try to avoid a police encounter and was not pursued by the police.

For these reasons, we find the trial court did not err in denying appellant's motion to suppress.  The judgment of the trial court is, therefore, affirmed.

Affirmed.

-

Benton, J., dissenting.

The Commonwealth does not satisfy its burden of proving consent "by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497 (1983). The evidence proved just that. Two police officers, at least one of whom was in uniform, were conducting a surveillance of an apartment building for drug activity at nighttime. When Glenn Mosley walked out of the building and reached the pavement, the two officers walked toward him to determine whether he was banned from the property. As Mosley turned to walk to the parking lot, the officers did the same. They then "approached him and asked him if he was a resident on the property." When Mosley said "no," the officers asked "if he had some kind of an I.D." When Mosley again said "no," the officer "asked him if he could give [the officer] his personal information." After securing that information, one of the officers then began to check "the ban list." When the officer determined that Mosley was not on it, he then "started radioing in to check to see if [Mosley] gave . . . correct information" and "to see if there were any outstanding warrants on him."

Nothing about the circumstances of the encounter would have objectively conveyed to a reasonable person that he was free to leave after the officer asked if he lived in the apartment, demanded identification, and produced a "ban list" to verify the person's name. At the outset, this conduct by the officers was

-

a confrontation with an accusation that Mosley was a trespasser. See McGee v. Commonwealth, 25 Va. App. 193, 487 S.E.2d 259 (1997) (en banc).  The very nature of their inquiry "convey[ed] a message that compliance with their requests [was] required." Florida v. Bostick, 501 U.S. 429, 435 (1991).

"Police need not physically drag a suspect to a halt before an encounter will be characterized as a stop."  Langston v. Commonwealth, 28 Va. App. 276, 282, 504 S.E.2d 380, 383 (1998). "When the officers detained [Mosley] for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment." Brown v. Texas, 443 U.S. 47, 50 (1979).  As we have noted, "[t]he circumstances of the encounter may indicate, even without physical restraint, a suspect is not free to leave."  Langston, 28 Va. App. at 282, 504 S.E.2d at 383.  Here, the officers suspected that Mosley was a trespasser and put him on notice by their inquiry that he was being investigated.  Their approach and level of questioning of Mosley "surely amount to a show of official authority such that 'a reasonable person would have believed that he was not free to leave.'"  Royer, 460 U.S. at 502 (citation omitted).  See also Parker v. Commonwealth, 255 Va. 96, 103, 496 S.E.2d 47, 51 (1998) (holding that the manner of the officer's approach established "a show of authority which restrained the defendant's liberty").

-

I would hold that the evidence proved a seizure, that the seizure was not based on a reasonable, articulable suspicion as required by Terry v. Ohio, 392 U.S. 1 (1968), and that the trial judge erred in refusing to suppress the evidence.