UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien, and Senior Judge Frank
Argued by teleconference

MICHAEL ANTHONY PATTON, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 1494-19-2      JUDGE ROBERT P. FRANK
JULY 7, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Stephen A. Mutnick (Blackburn, Conte, Schilling & Click, P.C., on
brief), for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Michael Anthony Patton, Jr., appellant, was convicted, in a bench trial, of possession

with the intent to distribute cocaine, in violation of Code § 18.2-248.[1]  On appeal, he challenges

the sufficiency of the evidence.  For the reasons stated, we affirm the conviction.

BACKGROUND

Henrico County Police Officer L.D. Pacifico observed appellant's vehicle speeding and

employed his lights and siren to stop the car.  Appellant drove past ten houses before entering the

driveway of his uncle's house and parking the car behind the house.  Appellant was the sole

occupant of the vehicle.  Officer Pacifico became suspicious when he saw appellant reach down

to the right of the driver's seat.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was charged with possession of a firearm while in possession of cocaine
and possession of a firearm as a nonviolent convicted felon.  The trial court acquitted appellant
of the firearm charges.

Officer Pacifico patted down appellant after smelling marijuana emanating from the vehicle and appellant handing him a marijuana smoking device. Appellant reluctantly spread his legs for the pat down. Officer Pacifico found nothing suspicious. Officer J. R. Burton arrived as back-up and patted down appellant again, also finding nothing. Appellant did not appear to be nervous, and the officers allowed him to walk around the immediate area. At one point, appellant bent over at the waist to look at the police car, but nothing fell out of his pants.

While searching appellant's vehicle, Officer Pacifico discovered a firearm in a "secret compartment" located below and to the right of the driver's seat but not in the center console. Officer Burton then handcuffed appellant with his hands behind his back. Appellant denied any knowledge of the firearm and informed the officers that the vehicle belonged to his mother.

Officer Pacifico continued to search appellant's vehicle while Officer Burton stood with appellant between a trashcan and the rear of Pacifico's police vehicle. Officer Burton heard a "thud from . . . the rubber trashcan at the side." Although he had been holding appellant by one elbow, Officer Burton did not recall appellant making "any weird movements" before he heard the thud. Officer Burton immediately looked to the ground and saw two plastic bags, but he "couldn't make out completely" what was inside them. Officer Burton exclaimed, "Really!" He called Officer Pacifico over to shine a flashlight on the two objects, which revealed two separate plastic corner baggies containing white powder. Officer Burton testified that the trashcan was about eight or nine inches from him and appellant and that the drugs were on the ground four to six inches from the trashcan. Officer Burton, appellant, the two baggies, and the trashcan "were all within a couple of feet of each other." Appellant, whose hands were still handcuffed behind his back, "denied anything to do with that cocaine on the ground."

Officer Burton testified that he had walked by the area where the baggies were recovered five to six times. He had not observed anything on the ground in that area before he heard the

thud. Officer Burton said that he could not always see the location of appellant's hands prior to appellant being handcuffed. Officer Burton stated that appellant would still have been able to access the back of his pants and belt after he was handcuffed, but he did not feel the appellant's arm move in any way prior to the thud. Officer Burton did not identify anything else in the area that could have caused the sound.

Officer Pacifico testified that he saw two corner baggies of white powder on the ground about six to eighteen inches from appellant. He stated that he had walked through the area where the drugs were recovered at least three times and had not seen anything there previously. He testified that he had not looked specifically in the area of the trashcan when walking to and from his police car, but he had checked the area because he was trained to examine his surroundings "to make sure there's nothing there that can either hurt you or something that is important." Because it was nighttime, the area was illuminated by an outdoor light attached to the nearby house and by the police vehicle lights, and both officers could see the ground clearly.

Officer Pacifico testified that appellant had about $400 in cash. Officer Pacifico said that he did not consider the cash to be a suspiciously large amount. He did not recover any scales in appellant's vehicle.

Forensic analysis determined that the two baggies held approximately seven grams of cocaine. One baggie contained 1.1186 grams, and the second baggie contained 5.92 grams. Detective K.M. Winter testified as an expert in investigating the distribution and possession of narcotics. Detective Winter testified that, based on his training and experience, the quantity of cocaine recovered was inconsistent with personal use. He testified that he had never encountered a single user with that amount of cocaine. Detective Winter explained that a heavy cocaine user uses about 1.5 grams per day, and therefore "[i]t is pretty unheard of for a user with that amount of a habit to have seven grams on him because when they're that bad in their addiction, they

would use as much as they had on hand." Detective Winter noted that a user who is "that bad at their habit" usually does not have enough money to purchase seven grams of cocaine. He testified that when a user purchases cocaine for his habit, it is not typical for the purchaser to "buy[] in bulk." Detective Winter also noted that the cocaine was contained in two individual baggies. He estimated the amount of cocaine recovered was valued at roughly $500.

Appellant was convicted of possession of cocaine with intent to distribute. This appeal followed.

ANALYSIS

On appeal, appellant contends the evidence is insufficient to convict him because the evidence does not exclude the possibility that the drugs were on the ground before the officers discovered the two baggies. He also challenges the sufficiency of the evidence to prove he distributed drugs.

"We review a challenge to the sufficiency of the evidence under well-settled legal principles. On appeal, this Court considers the evidence in the light most favorable to the Commonwealth, as the prevailing party below, granting to it all reasonable inferences that flow from the evidence." Chavez v. Commonwealth, 69 Va. App. 149, 161-62 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "Viewing the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth.'" Id. (quoting Banks, 67 Va. App. at 288). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Id. (quoting Banks, 67 Va. App. at 288). The challenge for the appellate court reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the

- 4 -

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 161-62 (quoting Banks, 67 Va. App. at 288).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Maldonado v. Commonwealth, 70 Va. App. 554, 561-62 (2019) (quoting Burrous v. Commonwealth, 68 Va. App. 275, 279 (2017)). In conducting our analysis, we are mindful that "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." Id. (quoting Miller v. Commonwealth, 64 Va. App. 527, 536 (2015)).

Additionally, "circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Dowden v. Commonwealth, 260 Va. 459, 468 (2000). Circumstantial evidence is not "viewed in isolation." Brown v. Commonwealth, 54 Va. App. 107, 119 (2009). Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Dowden, 260 Va. 459, at 470; Brown, 54 Va. App. at 119.

To convict appellant of illegal drug possession, the Commonwealth had to prove beyond a reasonable doubt that appellant was aware of the presence and character of the cocaine and that he consciously possessed it. See Yerling v. Commonwealth, 71 Va. App. 527, 532 (2020). "Mere proximity to a controlled drug is not sufficient to establish dominion and control," but proximity is a factor to be considered. Id. (quoting Drew v. Commonwealth, 230 Va. 471, 473 (1986). "[P]roof of actual possession is not required; proof of constructive possession will suffice." Id. (quoting Walton v. Commonwealth, 255 Va. 422, 426 (1998)). "Constructive possession may be established when there are 'acts, statements, or conduct of the accused or

other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Id. (quoting Drew, 230 Va. at 473).

In finding appellant guilty of possessing cocaine with the intent to distribute, the trial court noted that, when examining "the whole circumstances," appellant continued to drive his vehicle after Officer Pacifico initiated the traffic stop, the appellant admitted there was marijuana in the vehicle, and Officer Pacifico observed unusual movement while appellant was still in the vehicle. The court also noted the officers had viewed the area where the cocaine was recovered several times and that Officer Burton immediately saw two bags on the ground after he heard a thud in that exact area. The court stated, "You have to use a little bit of reasonableness in this." The court noted the "amount of drugs on the street" and concluded that it was "unlikely" for the appellant to be "stand[ing] there and then find the drugs."

The record supports the trial court's findings. When Officer Pacifico attempted to stop appellant's vehicle, appellant ignored the officer's signals and continued to drive without pulling over. After Officer Pacifico stopped the vehicle, he saw appellant reaching down to the right side of the driver's seat.

Once appellant exited his car, he reluctantly spread his legs wide enough for a pat down search after Officer Pacifico repeatedly told him to widen his legs. Appellant's hesitancy indicates his knowledge of the cocaine and his desire to conceal it.

Officer Burton was standing next to appellant between a trashcan and the rear of a police car when he heard a thud from the rubber trashcan. No one else was in the area. Officer Burton immediately looked to the ground where he saw two plastic bags. Officer Pacifico shone his flashlight on the ground, illuminating two separate baggies that each contained a white substance. Both officers had surveyed the area when they previously walked through it, and

neither officer had seen anything on the ground before Officer Burton heard the thud. The trashcan was about eight to nine inches from where appellant stood, and the drugs were four to six inches from the trashcan.

Here, the trial court, as fact finder, considered appellant's reluctance to cooperate with the police, his furtive gestures, the location of the cocaine in close proximity to appellant, and the fact that the two baggies were not on the ground when the officers first inspected the area. The evidence clearly reveals appellant was aware of the presence and character of the cocaine and that he continuously and consciously possessed it until he threw the two baggies to the ground near the trashcan.

Appellant contends that the evidence did not exclude the "very real possibility" that the drugs were there prior to appellant being near the trashcan. However, "[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs" on the ground. Langston v. Commonwealth, 28 Va. App. 276, 286 (1998) (quoting Brown v. Commonwealth, 15 Va. App. 1, 10 (1992) (*en banc*)). "Whether [a] hypothesis of innocence is reasonable is itself a 'question of fact' subject to deferential appellate review." Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004) (citation omitted) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277 (2004)). The trial court rejected appellant's "hypothesis." It properly may be inferred that the baggies were dropped when the officer heard a thud. See Langston, 28 Va. App. at 286 (holding that the evidence sufficiently proved that the defendant possessed the bag of cocaine found on the floor of a police van after the defendant had been the only person transported in the van). Further, it reasonably may be inferred that no one would carelessly or deliberately leave drugs valued at $500 on the ground. See Watts v. Commonwealth, 57 Va. App. 217, 233 (2010).

The evidence further proved that appellant possessed the cocaine with the intent to distribute. Proof of intent to distribute drugs often must be shown by circumstantial evidence when direct proof is not possible. See Burrell v. Commonwealth, 58 Va. App. 417, 434 (2011).

> Accordingly, the fact-finder may consider such factors as the quantity of the drugs seized and the presence of equipment or other items related to drug distribution. An expert witness may use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use. As with any case, the fact-finder is entitled to make reasonable inferences from the evidence presented at trial to determine whether the defendant possessed drugs with the intent to distribute them.

Id. (citations omitted).

Here, the two baggies contained approximately seven grams of cocaine; one baggie held 1.1186 grams, and the second baggie held 5.92 grams. That there were two separate bags, containing different amounts of cocaine, indicates possession with an intent to distribute. See Scott v. Commonwealth, 55 Va. App. 166, 174 (2009) (*en banc*) (noting the drugs the defendant possessed were packaged individually in baggie corners); Langston, 28 Va. App. at 286 (same). The police recovered no paraphernalia indicating appellant personally used cocaine. See Scott, 55 Va. App. at 178-79 ("We have consistently held that the absence of paraphernalia consistent with use is another factor indicating that the drugs were possessed with the intent to distribute.").

Detective Winter testified as an expert that, based on his training and experience, the quantity of drugs recovered was inconsistent with personal use; he explained that he had never seen a single user with that amount of cocaine. "[Q]uantity, alone, may be sufficient to establish such intent [to distribute] if it is greater than the supply ordinarily possessed for one's personal use." Cole v. Commonwealth, 294 Va. 342, 361-62 (2017) (holding that the evidence was sufficient to establish defendant's intent to distribute cocaine where defendant had "at least five rocks of cocaine weighing over five grams collectively," which an expert testified was "at least

five times the amount of cocaine that a typical user would carry") (quoting <u>Dukes v.</u> <u>Commonwealth</u>, 227 Va. 119, 122 (1984)).

Given the totality of the circumstances in this case, the trial court did not err in convicting appellant of possession with the intent to distribute. <u>See</u> <u>Holloway v. Commonwealth</u>, 57 Va. App. 658, 670 (2011) (*en banc*).

CONCLUSION

The trial court did not err in finding appellant guilty of possession with the intent to distribute cocaine. Appellant was aware of the presence and character of the cocaine, and the cocaine was subject to his dominion and control. The evidence also supports the trial court's finding that appellant had the intent to distribute the cocaine.

<u>Affirmed.</u>