COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Frank and Senior Judge Hodges
Argued at Salem, Virginia


DORIAN LEE-KIRK SHACKLEFORD
                                            OPINION BY
v.    Record No. 2883-98-3      JUDGE SAM W. COLEMAN III
                                         MARCH 28, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                  Mosby G. Perrow, III, Judge

          Elizabeth P. Murtagh, Senior Assistant Public
          Defender (Office of the Public Defender, on
          brief), for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Dorian Lee-Kirk Shackleford, a juvenile, was transferred to

the circuit court for trial as an adult and was convicted in a

bench trial of possession with intent to distribute cocaine in

violation of Code § 18.2-248, transporting cocaine into the

Commonwealth with the intent to sell or distribute in violation

of Code § 18.2-308.4(b), and possession of a firearm with intent

to distribute a controlled substance in violation of Code

§ 18.2-248(c).  On appeal, Shackleford contends that the trial

court erred by:  (1) denying his motion to dismiss the

indictment for lack of jurisdiction because his father was not

notified of the transfer hearing or the appeal from that

hearing; (2) denying his motion to dismiss because his mother

was not notified of the appeal pending in the circuit court of the transfer hearing; (3) denying his motion to continue the appeal of the transfer proceedings due to his mother's lack of notice; (4) denying his motion to suppress his confession and the evidence found during the search of the taxicab; and (5) finding the evidence sufficient to support his convictions. Finding no error, we affirm.

## BACKGROUND

On January 7, 1998, Special Agent J.C. Miers and Trooper Mike Hall were conducting an undercover drug interdiction at the Greyhound bus station in Lynchburg, Virginia. Miers and Hall observed Shackleford exit a bus with a single carry-on bag and enter the bus terminal. Shackleford later approached Miers and asked for the phone number of the local cab company. After Shackleford called to summon a cab, Miers approached him, displaying his badge. Shackleford accompanied Miers to a remote corner of the bus terminal to speak with him. Shackleford stated that he was traveling from New York to Lynchburg to visit his sick aunt in the hospital. He then stated that he was going to take a cab to some other location and his aunt would pick him up later and take him to her residence. Miers testified that he became suspicious and asked Shackleford for permission to search his bag. Shackleford did not consent, stating that the bag contained his aunt's personal items. The taxicab arrived and Shackleford left.

Shackleford advised the cab driver to take him to a motel on the outskirts of town, which further aroused Miers' suspicions. While following the cab to the motel, Miers and Hall observed Shackleford shifting from side to side and leaning over in the cab. Hall contacted a K-9 unit and requested that an officer meet him at the motel.

When Shackleford arrived at the motel, a uniformed police officer was waiting by his patrol vehicle. Shackleford exited the cab and set his bag on the ground. Miers approached Shackleford and informed him that he was free to go but that his bag would be detained in order to allow the K-9 unit to sniff the bag. Miers testified that Shackleford consented to the search of his bag, stating that "there's no drugs or anything in it." Simultaneously, Hall requested and received permission from the cab driver to search the taxicab where he discovered a semi-automatic weapon and an oblong package on which the K-9 unit alerted. The package contained fourteen individual plastic baggies of crack cocaine. The cab driver stated that he had cleaned his taxi the previous night and that Shackleford was the first fare of the day. The cab driver testified that, although he was unable to visually observe Shackleford while en route to the motel, the cab driver heard what sounded like someone "stuffing" a bag or paper under the seat.

Shackleford was arrested and transported to the police station.  Miers advised Shackleford of his <u>Miranda</u> rights and because he was a minor, his right to have his parents present.  Shackleford signed a waiver-of-rights form and, without requesting his parents' presence, made a statement.  Shackleford also informed Miers that he was a naturalized citizen and resident of New York.

The Commonwealth filed three petitions in juvenile and domestic relations district court charging Shackleford with the three drug-related offenses.  The petitions listed Shackleford's mother's name and address.  The petition also listed Shackleford's father's name; however, the petition stated only that he lived in Kingston, Jamaica and gave no further information.

The juvenile court held a transfer hearing pursuant to Code § 16.1-269.1.  The transfer report listed Leon Shackleford as Shackleford's father and listed his address as Kingston, Jamaica, but provided no further information.  The juvenile court judge found probable cause to believe that Shackleford had committed the charged offenses, <u>see</u> Code § 16.1-269.1(A)(2), and found that Shackleford was "not a proper person to remain within the jurisdiction of the juvenile court."  Code § 16.1-269.1(A)(4).  Accordingly, the juvenile court transferred Shackleford to the circuit court to be tried as an adult.

Prior to hearing the appeal of the transfer decision in circuit court, Shackleford filed a motion to continue the proceedings because his mother had not been notified. The circuit court denied the motion. Shackleford was subsequently indicted in circuit court on the three charges. After indictment, Shackleford filed a motion to dismiss arguing that the trial court lacked jurisdiction because neither parent had been notified of the appeal of the transfer hearing and because his father was not notified of the filing of the petition and transfer hearing in juvenile court. The trial court denied the motion.

Prior to trial, Shackleford filed a motion to suppress his statement and the physical evidence found in the taxicab. He argued that his statement was obtained in violation of his constitutional rights in that he was not adequately advised of his right to counsel and his rights under the Vienna Convention in that he was denied his right to consult a member of the Jamaican Embassy in Washington, D.C. Shackleford further argued that the firearm and the cocaine should be suppressed because the discovery of the physical evidence was tainted by his illegal detention after he exited the taxicab. The trial court denied the motion.

The circuit court found Shackleford guilty of the three charges and sentenced him to a total of twenty-three years with

sixteen years suspended, a $2,500 fine, and suspension of his operator's license for six months.

## ANALYSIS

### A.  Jurisdiction

#### 1.  Father's Notification

Shackleford argues that the circuit court lacked jurisdiction because the juvenile court did not comply with the mandatory notice requirements of Code §§ 16.1-263 and -264 by failing to provide notice of the transfer hearing to his father.

Code § 16.1-263(A) states that "[a]fter a petition has been filed, the court shall direct the issuance of summonses . . . to the parents . . . ."[1]  Code § 16.1-263 further provides that notice "of subsequent proceedings shall be provided to all parties in interest."  Code § 16.1-263(B).  "We have held that 'compliance with [Code §§ 16.1-263 and 16.1-264] relating to procedures for instituting proceedings against juveniles, are mandatory and jurisdictional.  The failure to strictly follow the notice procedures contained in the Code [deny the defendant] a substantive right and the constitutional guarantee of due process.'"  Weese v. Commonwealth, 30 Va. App. 484, 489, 517

---

[1] In 1999, the General Assembly amended Code § 16.1-263 to provide that after a petition is filed alleging a juvenile felony or delinquent act, a summons shall be directed "to at least one parent," rather than to the "parents" as provided in the version in effect when the petition was filed against Shackleford.

S.E.2d 740, 743 (1999) (quoting Karim v. Commonwealth, 22 Va. App. 767, 779, 473 S.E.2d 103, 108-09 (1996) (en banc)). Thus, we have held that where a juvenile court conducts a delinquency proceeding without notifying the parents or certifying that notice cannot reasonably be obtained, a conviction order resulting from the proceedings is void. See Baker v. Commonwealth, 28 Va. App. 306, 315, 504 S.E.2d 394, 399 (1998), aff'd per curiam, 258 Va. 1, 517 S.E.2d 219 (1999); Williams v. Commonwealth, 26 Va. App. 776, 781-82, 497 S.E.2d 156, 159 (1998); Karim, 22 Va. App. at 779-80, 473 S.E.2d at 108-09. Furthermore, where the void juvenile court order purports to transfer jurisdiction over the juvenile to a circuit court to be tried as an adult, the circuit court is without jurisdiction and the resulting conviction orders are void, unless the necessary parties have waived the defect or the defect has been otherwise corrected. See e.g. Baker, 28 Va. App. at 313, 504 S.E.2d at 398; Karim, 22 Va. App. at 779-80, 473 S.E.2d at 108-09.

In Moore v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (2000) (No. 990776), the Virginia Supreme Court held that, in cases where the offense was committed on or after July 1, 1996, the notice requirements of Code §§ 16.1-263 and -264 are subject to waiver by virtue of Code § 16.1-269.1(E), which was enacted by the General Assembly in 1996, and any defect or error in the proceedings is cured if not raised before indictment. The Supreme Court held

- 7 -

that Code § 16.1-269.1(E) controls, which provides in relevant part: "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age." The Supreme Court found that, although "the Commonwealth's failure to notify the defendant's biological father of the initiation of juvenile court proceedings . . . created a defect in those proceedings[,] . . . that defect was cured when the grand jury returned indictments against the defendant of the offenses certified to it by the juvenile court." The curative statutory provision of Code § 16.1-269.1(E) allowed the circuit court to exercise its subject matter jurisdiction.

Here, because the offenses were committed after July 1, 1996, our decision is controlled by Code § 16.1-269.1(E) and by the Supreme Court's decision in Moore. See Moore v. Commonwealth, 14 Va. App. 83, 85, 414 S.E.2d 859, 860 (1992) (noting that panels of the Court of Appeals are bound by Supreme Court precedent). Therefore, because Shackleford failed to raise the jurisdictional issue of lack of notice to his father before the indictments were returned in the circuit court, failure to comply with the parental notification provisions of Code §§ 16.1-263 and -264 did not deprive the circuit court of jurisdiction.

Shackleford argues that the circuit court failed to notify his parents of the appeal from the transfer hearing. The juvenile court served Shackleford's mother with a summons, and she attended the juvenile court hearing. However, Shackleford argues that the failure of the circuit court to serve notice upon his mother and father violated the mandate of Code §§ 16.1-263 and -264 and without such notice in the de novo proceeding, the circuit court lacked jurisdiction to hear the petition. Shackleford claims the circuit court violated the mandate of Code § 16.1-263(B), which requires that notice "of subsequent proceedings . . . be provided to all parties in interest." Shackleford asserts that this requirement is mandatory and jurisdictional.

We find that, with respect to Shackleford's mother, the constitutional and jurisdictional notice requirements were satisfied by notifying Shackleford's mother of the pendency of the petition and hearing in the juvenile court. See Weese, 30 Va. App. at 491, 517 S.E.2d at 744 (finding that additional notice of subsequent proceedings in circuit court is not constitutionally required and jurisdictional). Therefore, so long as Shackleford's mother received notice of the nature of the petition and a summons indicating the time, date, and place of the initial hearing, the constitutional and jurisdictional notice requirements were satisfied. Because Shackleford's mother received notice of the

- 9 -

original proceedings, she had the opportunity, following Shackleford's appeal, to appear and be involved in subsequent proceedings, including the de novo hearings in the circuit court. "Although Code § 16.1-263(B) may require additional notice of 'subsequent proceedings' where necessary to inform the parent or guardian of such proceedings, failure to give such notice does not divest the court of jurisdiction . . . ." Weese, 30 Va. App. at 492, 517 S.E.2d at 744.

Moreover, to the extent that Shackleford argues that the circuit court failed to notify his father of the appeal from the transfer hearing, he has waived any challenge to jurisdiction because he failed to raise the issue prior to indictment. See Code § 16.1-269.1(E).

## B. Motion for Continuance

Shackleford argues that the trial court erred in failing to continue the April 28, 1998 hearing of the appeal from the transfer decision because his mother was not present. Shackleford objected to his mother's absence because he was unable to call her as a witness, thus, depriving him of a fair hearing. Shackleford asserts on appeal that his mother would have testified to his immigration status, his pending petition for amnesty, threats made against him and his family, and "his family history." Shackleford asserts that this testimony was essential in determining whether he was a proper person to

remain before the juvenile court.  "'The decision whether to grant a continuance is a matter within the sound discretion of the trial court.'"  Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990) (quoting Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)).

> The Virginia Supreme Court has established a two-pronged test for determining whether a trial court's denial of a continuance request is reversible error.  Under this test, we may reverse a trial court's denial of a motion for a continuance only if it appears from the record:  (1) that the court abused its discretion and (2) that the movant was prejudiced by the court's decision.

Lebedun v. Commonwealth, 27 Va. App. 697, 712-13, 501 S.E.2d 427, 434 (1998) (citation omitted).

Prior to the hearing, defense counsel argued that the court file was devoid of any reference regarding notification of the hearing to Shackleford's mother.  Defense counsel asserted that Shackleford's "mother is a necessary party to the proceedings" and that although the probation officer may "be able to provide some of the information," counsel objected to Shackleford's mother not being present.  Probation Officer Gerald Brown testified that Shackleford's mother was informed of the hearing but she contacted Brown and informed him that she was unable to attend the hearing because of financial and work-related considerations.  Brown also testified regarding Shackleford's immigration status, his pending

petition for amnesty, and the threats made against Shackleford and his family.

We find no abuse of discretion in the trial judge's denial of the motion to continue the hearing.  Although Shackleford objected to the lack of his mother's presence at the hearing, he never proffered what his mother's testimony would be.  Moreover, the matters Shackleford now asserts his mother would have testified about were matters addressed by the probation officer at the hearing.  Accordingly, Shackleford has failed to show that he was prejudiced by the court's refusal to continue the hearing.  Further, there was a lack of due diligence in obtaining Shackleford's mother's presence.  See Shifflett v. Commonwealth, 218 Va. 25, 30, 235 S.E.2d 316, 319-20 (1977) (citation omitted).  Although Shackleford maintains that his mother's presence was required at the hearing, as previously noted, her presence was not required.  Additionally, there was no indication that had the court continued the hearing, Shackleford's mother would have been available at a future date given that her absence was due in part to her financial inability to attend.  See Chichester v. Commonwealth, 248 Va. 311, 322, 448 S.E.2d 638, 646 (1994) (stating that "[t]he burden is on the party seeking a continuance to show that it is likely that the witness would be present at a later date").

## C.  Motion to Suppress

Next, we consider whether the trial court erred by denying Shackleford's motion to suppress his statement made to the police and the firearm and drugs found in the taxicab.  Shackleford argues that his statement was obtained in violation of his constitutional rights and his rights under the Vienna Convention.  Specifically, he asserts that he was not adequately advised of his right to counsel and that he was denied his right to consult a member of the Jamaican Embassy in Washington, D.C.  Shackleford further argues that, because he was illegally detained after he exited the taxicab, his statements to the police and the physical evidence found in the cab should be suppressed as "fruits of the poisonous tree."

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence."  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  In our analysis, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

## 1.  Miranda Warnings

Shackleford argues that the police interrogated him in violation of his Fifth Amendment right to counsel and that the trial judge erred in refusing to suppress the statement.  From a preprinted page, Miers read to Shackleford a statement of his rights.  Miers, however, modified the preprinted form to include the following:

> YOU HAVE THE RIGHT TO TALK TO A LAWYER OR PARENTS FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE A LAWYER OR PARENTS WITH YOU DURING QUESTIONING.

(Emphasis added).  Shackleford informed Miers that his father resided in Kingston, Jamaica and that his mother resided in New York, but was out of town and could not be reached.  Shackleford did not request either his parents' presence or a lawyer's presence.  Shackleford signed the preprinted form indicating that he understood his rights and that he wished to speak with the officers at that time.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The United States Supreme Court held "that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right [to the accused] . . . before questioning begins."  Davis v. United States, 512 U.S. 452, 457 (1994) (citing Miranda v. Arizona, 384

- 14 -

U.S. 436, 469-73 (1966)). Once the accused has been advised of his <u>Miranda</u> rights, he may make a knowing and intelligent waiver of those rights and respond to the police interrogation. <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373-75 (1979). The Commonwealth, however, must prove by a preponderance of the evidence that the waiver was made voluntarily, knowingly, and intelligently. <u>See</u> <u>Goodwin v. Commonwealth</u>, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986).

We hold that the trial judge did not err in ruling that Shackleford voluntarily and knowingly waived his Fifth Amendment rights to remain silent and to have counsel present during a custodial interrogation. We find that the addition of the language "or his parents" to the waiver-of-rights form did not mislead Shackleford into believing that if he requested his parents' presence, he would forgo his right to have counsel present, and we find that the addition of the phrase in no way diminished the importance of the right to counsel. Here, Miers, aware that Shackleford was a minor, advised him that he could request his parents to be present. Miers also complied with the mandate of <u>Miranda</u> and fully informed Shackleford of his right to have an attorney present and his right to remain silent. Miers also verbally informed Shackleford that "the right to have his parents present" was in addition to and not in lieu of his right to have an attorney present. Shackleford waived his right to

remain silent and his right to have a lawyer present; therefore, the trial judge did not err in refusing to suppress Shackleford's statement.

## 2. International Law

Shackleford's contention that the trial court erred by denying his motion to suppress his statement because he was not informed of his right to contact a member of the Jamaican Embassy is without merit. In Kasi v. Commonwealth, 256 Va. 407, 419, 508 S.E.2d 57, 64 (1998) cert. denied, 119 S. Ct. 2399 (1999), the Virginia Supreme Court noted that "there is no reported authority for the idea that a violation of the [Vienna Convention] creates any legally enforceable individual rights. And, the provisions of the document create no such rights." Moreover, the Court in Kasi rejected, as speculative, the defendant's contention that had he been advised of his "rights" under the Vienna Convention he would not have confessed. See id. Accordingly, we find that any failure to notify Shackleford of his right to contact the Jamaican Embassy did not violate his constitutional rights.

## 3. Suppression of Physical Evidence

Shackleford maintains that he was unlawfully detained when he arrived at the motel; and, therefore, his statements and the physical evidence found in the taxicab should be suppressed as "fruits of the poisonous tree."

Here, while Miers was informing Shackleford that he was going to have the K-9 unit search the bag, Hall was simultaneously searching the taxicab pursuant to the cab driver's consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (finding that the Fourth Amendment is not implicated where search was pursuant to a valid consent); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc) (noting that consensual encounters between police and citizens do not implicate the Fourth Amendment). Hall immediately discovered the firearm, and the narcotics dog alerted to the presence of a controlled substance also in the taxicab. The lawful discovery of the firearm and the controlled substance provided probable cause to arrest Shackleford. Therefore, any statements obtained by the police after Shackleford was lawfully arrested and given his Miranda warnings was not in violation of the Fourth Amendment.

### D. Sufficiency

Shackleford argues that the evidence is insufficient to support his convictions. He argues that the evidence failed to prove that he was aware of the nature and character of the substance or of the presence of the firearm. He argues that the evidence was insufficient to prove that he intended to distribute the drugs. Further, he argues that the Commonwealth failed to prove that he intended to distribute more than one ounce of cocaine.

On review, we view the evidence in the light most favorable to the prevailing party and grant to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986) (citations omitted).  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citation omitted).

### 1.  Possession of Controlled Substance

"To establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it."  Gillis v.

_Commonwealth_, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974). "Physical possession giving the defendant 'immediate and exclusive control' is sufficient." _Ritter v. Commonwealth_, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). "Possession of a controlled substance gives rise to an inference of the defendant's knowledge of its character." _Josephs v. Commonwealth_, 10 Va. App. 87, 101, 390 S.E.2d 491, 498-99 (1990) (_en_ _banc_) (citation omitted). Knowledge may also be proven "by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found." _Ritter_, 210 Va. at 741, 173 S.E.2d at 806 (citation omitted).

Shackleford argues that the evidence failed to prove that he was aware of the presence and character of the cocaine when he possessed it. Shackleford testified that he received an anonymous call, instructing him to pick up a bag and deliver it to Lynchburg, Virginia. He testified that the caller threatened to hurt his family if he refused to cooperate. In his written statement, he claimed that the caller appealed to his need for money and no mention was made of threats to hurt his family. He stated that he was specifically ordered not to look into the bag and that he was never told what was in the bag. After the police officers questioned him at the bus terminal, he said he became suspicious about what was in the bag. During the ride to the

motel, he decided to look into the bag for the first time, discovering the firearm and a wrapped package. Still unsure of the package's contents, he hid the package under the seat. The fact finder, however, was not required to accept Shackleford's theory that he was unaware of the nature of the substance in the package and unaware of the package's presence until he opened the bag. See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

We hold that the evidence supports the trial court's finding that Shackleford knowingly and intentionally possessed the cocaine. Shackleford acted suspiciously after he exited the bus from New York, a known source for drugs. He gave the officers inconsistent stories about his sick aunt, whom he claimed he was sent to visit. Once inside the taxicab, his behavior became even more suspicious. He moved from side to side in the back seat and made several "ducking" motions. The cab driver testified that, although he could not see Shackleford, he heard the crumpling sound of a bag. After he arrived at the motel and in response to the officer's request to search the bag, Shackleford remarked that "you can go ahead and search the bag, there's no drugs or anything in it." We find that the fact finder could have reasonably inferred, based on Shackleford's conduct, that he knowingly and intentionally possessed the cocaine.

We also find that the evidence is sufficient to support the trial court's finding that Shackleford possessed the cocaine with the intent to distribute.  "Because direct proof of intent is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  "If evidence of intent is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'"  Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)).  Circumstantial proof of a defendant's intent includes the quantity of the drugs discovered, the packaging of the drugs, and the presence or absence of drug paraphernalia.  See Servis, 6 Va. App. at 524-25, 371 S.E.2d at 165.  Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use.  See Rodriguez v. Commonwealth, 18 Va. App. 277, 443 S.E.2d 419 (1994) (en banc), aff'd, 249 Va. 203, 454 S.E.2d 725 (1995); Poindexter v. Commonwealth, 16 Va. App. 730, 432 S.E.2d 527 (1993).

Here, although the Commonwealth failed to proffer evidence that 194.96 grams of cocaine discovered in the taxicab was inconsistent with personal use, other evidence supports an

inference that the cocaine was intended for distribution. Officer A.S. Thomas, an expert in the use and distribution of narcotics, testified that the street value of cocaine is approximately $100 to $150 per gram and that drugs are commonly packaged in individual bags to facilitate distribution. Further, the officer testified that possession of several individually-packaged bags of drugs was inconsistent with personal use. Shackleford was also found with a handgun, "a common tool of the drug-dealer's trade." Langston v. Commonwealth, 28 Va. App. 276, 286, 504 S.E.2d 380, 385 (1998) (citing Dixon v. Commonwealth, 11 Va. App. 554, 557, 399 S.E.2d 831, 833 (1991)). Finally, there was no evidence that the drugs were for Shackleford's personal use; he never claimed that he used drugs, and there was no drug paraphernalia found. See Langston, 28 Va. App. at 286, 504 S.E.2d at 385. Accordingly, we find that the evidence is sufficient to prove that Shackleford possessed the cocaine with the intent to distribute.

### 2. Weight of Controlled Substance

Shackleford next argues that the Commonwealth failed to prove that the weight of the drugs exceeded more than one ounce. He argues that because only a sampling of the substance was tested, the entire weight of the substance may not be attributable as cocaine. He argues that the forensic scientist should have tested each gram to determine the purity of the substance.

Chris Bryant, an expert in forensic science, testified that she weighed each individual bag, performed color tests, performed a chromatography test, and performed a GC/mass specification test on each bag. Bryant testified that the substance in each bag appeared to be homogeneous. The total weight of all fourteen packages was 194.96 grams.

The Commonwealth was not required to prove the purity of the substance. Code § 18.2-248.01 provides that it shall be unlawful to transport one ounce or more of "cocaine, coca leaves or any salt, compound, derivative or preparation thereof." The language of the statute mandates that the quantity of the mixture -- the "compound" or "preparation" -- rather than the purity of the cocaine in the mixture be used to determine the weight of the substance. See generally State v. Broome, 523 S.E.2d 448, 452 (N.C. Ct. App. 1999) (finding that legislative intent of statute prohibiting possession of "substance or mixture" mandates that the total weight of the substance be utilized without regard to purity); Riley v. State, 711 N.E.2d 489, 493 (Ind. 1999) (finding that legislature intended to use entire weight of substance "as this encompasses the common understanding of those in the drug trade"). Here, the forensic scientist testified that all the substances appeared to be homogenous and that the aggregate of the substance weighed 194.96 grams. Several tests were performed on several samples from each bag, and all the tests proved

conclusively that the substance was cocaine. Accordingly, we find that the evidence is sufficient to prove that Shackleford possessed more than one ounce of cocaine.

He also argues that the trial judge improperly took judicial notice of the conversion ratio of grams to ounces. "Judicial notice permits a court to determine the existence of a fact without formal evidence tending to support that fact." Scafetta v. Arlington County, 13 Va. App. 646, 648, 414 S.E.2d 438, 439, aff'd on reh'g, 14 Va. App. 834, 425 S.E.2d 807 (1992). "A trial court may take judicial notice of those facts that are either (1) so 'generally known' within the jurisdiction or (2) so 'easily ascertainable' by reference to reliable sources that reasonably informed people in the community would not regard them as reasonably subject to dispute." Taylor v. Commonwealth, 28 Va. App. 1, 7-8, 502 S.E.2d 113, 116 (1998) (en banc) (citations omitted). The trial court did not abuse its discretion in taking judicial notice of the conversion ratio of grams to ounces. The fact that 28.35 grams is equal to one ounce is easily ascertainable by reference to a reliable source.

### 3. Possession of a Firearm

Last, Shackleford, conceding that he possessed the firearm, argues that because the evidence is insufficient to prove that he possessed the cocaine with the intent to distribute, his conviction for possession of a firearm while possessing a

controlled substance with the intent to distribute cannot be sustained.  Because we found the evidence sufficient to support his conviction for possession of a controlled substance with the intent to distribute and because Shackleford concedes that he possessed the firearm, the evidence is sufficient to support his conviction for possession of a firearm.  <u>See</u> Code § 18.2-308.4(B).

For the foregoing reasons, we affirm the convictions.

<u>Affirmed.</u>