COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Humphreys and Millette
Argued at Chesapeake, Virginia


RICKY C. WILLIAMS
                                                                  OPINION BY
v.        Record No. 0996-07-1                         JUDGE ROBERT J. HUMPHREYS
                                                                  JUNE 24, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                              Mark S. Davis, Judge

            Anthony J. Nicolo (Ferrell, Sayer & Nicolo, P.C., on brief), for
            appellant.

            Josephine F. Whalen, Assistant Attorney General II (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Ricky C. Williams ("Williams") appeals his convictions for possession of cocaine with

intent to distribute and possession of methadone with intent to distribute, both in violation of

Code § 18.2-248.  Williams argues that the evidence was insufficient to convict him of either

crime because the Commonwealth did not sufficiently prove that he had the intent to distribute

the drugs.  For the following reasons, we conclude that the evidence was legally sufficient and

affirm the decision of the trial court.

                                    I.  Background

        When reviewing a challenge to the sufficiency of the evidence, "we examine the evidence

in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom."  Slade v. Commonwealth, 43 Va. App. 61, 69, 596 S.E.2d 90, 94 (2004).

In doing so, we resolve all conflicts in the evidence in favor of the Commonwealth.  Watkins v.

Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998).  We will not set aside the

factual findings of the trial court unless those findings are "plainly wrong or without supporting evidence." Foster v. Commonwealth, 38 Va. App. 549, 554, 567 S.E.2d 547, 549 (2002).

On August 17, 2005, at approximately 6:45 p.m., Detective T. McAndrew and Detective Kevin Johnakin, of the Portsmouth Police Department, initiated a traffic stop of a Honda station wagon because one of the car's brake lights was not functioning. Ricky Williams, the appellant, was in the passenger seat of the station wagon. As the officers approached the vehicle, Detective Johnakin saw Williams look over his shoulder at Detective McAndrew and toss three bags over his shoulder onto the back seat of the car. Detective Johnakin looked into the rear window as he approached the passenger door and saw that one of the bags appeared to contain heroin capsules.

Detective Johnakin opened the passenger door of the station wagon and placed Williams under arrest. Detective McAndrew retrieved the three bags from the back seat and identified their contents as what appeared to be heroin, cocaine, and methadone. Williams was unable to produce a prescription for the cocaine or the methadone. The Commonwealth subsequently charged Williams with possession with intent to distribute cocaine, possession with intent to distribute methadone, and possession with intent to distribute heroin.

At trial, the Commonwealth presented a certificate of analysis as evidence that the items in the bags were, in fact, controlled substances. The certificate indicated that one of the bags contained 38 capsules of heroin and that another bag contained 1.240 grams of cocaine. The third bag contained ten identical tablets. With regard to those tablets, the certificate indicated: "Visual examination determined that the physical characteristics are consistent with a pharmaceutical preparation containing Methadone. . . . One tablet was analyzed and found to contain Methadone, Schedule II."

In support of its allegation that Williams intended to distribute the drugs, the Commonwealth presented expert testimony from Detective R.M. Holley of the Portsmouth

Police Department. Williams stipulated that Detective Holley was an expert in the packaging, use, and distribution of narcotics, noting that Detective Holley had "been here as long as the courthouse building has been here."

Detective Holley testified that Williams' possession of the heroin, cocaine, and methadone was inconsistent with personal use. Holley first explained that the quantity and combination of the drugs indicated that Williams did not intend to use the drugs himself. Holley testified that possession of 38 capsules of heroin is highly unusual for an individual user because it would take even a heavy user as many as seven days to use that much heroin.[1] Holley also noted that it was inconsistent with personal use for a methadone user to possess ten tablets at a time without a prescription. He explained that methadone is a prescription drug used as a treatment for heroin users. It is sometimes given out without a prescription by local drug rehabilitation centers, but one tablet is given out at a time. Thus, it would be unusual for a user to have ten tablets without a prescription. Holley also explained that it would be "very unusual" for a user to possess heroin and methadone because the drugs have similar effects.

With regard to the cocaine, Holley testified that 1.240 grams of cocaine is "borderline close to personal use." He also explained that it is not completely unusual for cocaine users to sell heroin to finance their cocaine use. However, Holley concluded that the possession of the cocaine was inconsistent with personal use because it was possessed in combination with the other drugs. He explained that he had never, in his experience, known a user to possess cocaine, methadone, and heroin at the same time. Detective Holley repeatedly asserted that it would be "very unique," "very rare," and "not normal" for a personal user to possess heroin, methadone, and cocaine at the same time.

_____

[1] Williams conceded at trial that "38 caps is not what the average or even heavy user of heroin would have in his or her possession for personal use."

Holley also testified that the value of the drugs Williams possessed was inconsistent with personal use. At the time of his arrest, Williams was unemployed.[2] Holley explained that the street value of the drugs in the bags was "well over $700.00." Holley testified that he found it "hard to believe" that someone without a job could afford $700 in narcotics for purely personal use.

Williams made an unsuccessful motion to strike at the close of the Commonwealth's evidence and then took the stand on his own behalf. At no point during his testimony did Williams admit to using heroin, methadone, or cocaine, nor did he claim that he had intended to use any of the drugs that he possessed. Williams renewed his motion to strike at the close of evidence. He argued that the Commonwealth had not disproved his hypothesis of innocence – that he possessed all of the drugs for personal use. The trial court denied his motion, finding that the evidence was sufficient to prove that Williams possessed the drugs with the intent to distribute them. The trial court subsequently convicted Williams on all three charges and sentenced him to five years in prison on each of the three charges.

Williams now appeals his cocaine and methadone related convictions.

## II. Analysis

On appeal, Williams argues that the evidence was insufficient to prove that he intended to distribute the methadone and cocaine.[3] In reviewing a challenge to the sufficiency of the evidence, we will "'affirm the judgment unless it appears from the evidence that the judgment is

---

[2] Williams testified at trial that he was employed at the time of his arrest. However, Detective Johnakin testified that he had asked Williams if he was employed during the arrest and Williams had said that he was not. Under our standard of review, we must conclude that the trial court, as the fact finder, resolved this conflict in testimony in favor of the Commonwealth. Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980).

[3] Williams does not now, and did not at trial, contend that he was not in possession of the three bags of narcotics discovered in the Honda station wagon. His only claim is that he did not possess the requisite intent to be convicted of possession with intent to distribute.

plainly wrong or without evidence to support it.'" Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 610 (1981) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "Additionally, when a defendant challenges the sufficiency of the evidence, 'if there is evidence to sustain the verdict, this Court should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury.'" Dowden v. Commonwealth, 260 Va. 459, 467, 536 S.E.2d 437, 441 (2000) (quoting George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991)). In reviewing such a challenge, an appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original). Rather, we must ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319) (emphasis in original).

"An individual violates Code § 18.2-248(A) when he possesses 'the controlled substance contemporaneously with his intention to distribute that substance.'" Craddock v. Commonwealth, 40 Va. App. 539, 553, 580 S.E.2d 454, 461 (2003) (quoting Christian v. Commonwealth, 33 Va. App. 704, 716, 536 S.E.2d 477, 483 (2000) (*en banc*)). "Because of the difficulty of proving intent directly, the Commonwealth may (and often must) rely instead on circumstantial evidence." Id. However, "when a conviction is based on circumstantial evidence, the evidence 'must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence.'" Feigley v. Commonwealth, 16 Va. App. 717, 724, 432 S.E.2d 520, 525 (1993) (quoting Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984)).

Williams makes several arguments as to why the evidence was insufficient to convict him of possession with intent to distribute. However, only two of those arguments were presented to the trial court and, thus, are reviewable on appeal. At trial, Williams argued 1) that the Commonwealth failed to prove beyond a reasonable doubt that he did not possess the cocaine for personal use and 2) that the evidence was insufficient to prove his intent to distribute the methadone because the forensics lab analyzed only one of the methadone caplets.[4]

A. Intent to Distribute Cocaine

In regard to the cocaine conviction, Williams argues that the Commonwealth failed to disprove his reasonable hypothesis of innocence, namely, that he possessed the cocaine for personal use. The Virginia Supreme Court has recognized several factors that are "probative evidence of intent to distribute a controlled substance." McCain v. Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 547 (2001). Possession of a controlled substance in "a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it." Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987). "The method of packaging of the controlled substance is also a factor which may be considered in determining the purpose for which it is being held." Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978). We have recognized that "the unique, simultaneous possession of a combination of two disparate drugs" can be indicative of the possessor's intent to distribute. Harper v. Commonwealth, 49 Va. App. 517, 522, 642 S.E.2d 779, 781 (2007). We

---

[4] Williams makes two additional arguments that are barred by Rule 5A:18. He argues that Detective Holley's expert testimony was unreliable because Holley's "experience was not in evidence." He also alleges that the Commonwealth failed to disprove his new theory that he was only a co-possessor of the drugs because the man driving the car may have possessed some of the drugs. Williams did not present either of the arguments to the trial court and, thus, they are not appropriate for us to consider on appeal. See Rule 5A:18; Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978) (holding that appellate courts will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue).

- 6 -

have also held that "'expert testimony, usually that of a police officer,' is one factor or circumstance which the fact finder may consider in determining whether drugs were possessed with intent to distribute." Askew v. Commonwealth, 40 Va. App. 104, 110, 578 S.E.2d 58, 61 (2003) (quoting Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000)).

Here, Williams possessed three different controlled substances at the same time. The Commonwealth presented an expert who testified without objection that the large amount of heroin and methadone was "inconsistent with personal use" and that the amount of cocaine was "borderline close to personal use." The expert explained that the cost of drugs alone, over $700, made it highly unlikely that someone without a job would possess them for personal use. Aside from the sheer cost of possessing such a large quantity of narcotics, the expert repeatedly explained that it would be "very unique," "very rare," and "not normal" for a user to possess heroin, methadone, and cocaine at the same time. In fact, he had never seen those three drugs possessed simultaneously by a user, despite the fact that he had been around "as long as the courthouse building."

Furthermore, Williams elected to testify in his own defense. In doing so, he did not claim to have ever used heroin, methadone or cocaine. Nor did he claim that he had intended to use the drugs that he possessed. He did not do so, despite the fact that the only defense he advanced was that he possessed the drugs only for personal use.[5] While the self-incrimination clause of the Fifth Amendment would insure that no adverse inference could have been drawn by the fact finder had Williams elected to not testify in his own defense, by waiving the protection of the

---

[5] At the end of his argument on his motion to strike, Williams did not ask the trial court to dismiss the charges against him. Rather, he merely asked the court to reduce the charges to simple possession, stating, "we would ask the court to enter a verdict of possession of cocaine and possession of methadone."

- 7 -

Fifth Amendment by testifying, the fact finder was entitled to draw any reasonable inferences from Williams' testimony. See Jenkins v. Anderson, 447 U.S. 231, 235 (1980) (holding that when a criminal defendant "takes the stand in his own behalf, he does so as any other witness"). Under such circumstances, Williams' failure to acknowledge that he had *ever* used drugs supports the reasonable inference that he did not intend to use the large quantity of drugs he possessed at the time of his arrest. See Shackleford, 32 Va. App. at 327, 528 S.E.2d at 133 (finding relevant that the accused "never claimed that he used drugs" in holding the evidence sufficient to prove intent to distribute); Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (*en banc*) (finding relevant that "no evidence in the record showed appellant personally used cocaine" in holding the evidence sufficient to prove intent to distribute).

Detective Holley's expert testimony about the "factors he considered are inconsistent with personal use can be considered by the fact finder together with other evidence to determine whether the Commonwealth's evidence proves beyond a reasonable doubt the intent to distribute." Askew, 40 Va. App. at 110, 578 S.E.2d at 61. Detective Holley's credentials were unchallenged, and his expert testimony was clear and unequivocal. It was not unreasonable for the trial court to accept his opinion that Williams' possession of cocaine was inconsistent with personal use. Thus, we cannot say that the Commonwealth failed to disprove Williams' theory of innocence.

### B. Intent to Distribute Methadone

Williams claims that the evidence was insufficient to prove his intent to distribute methadone because the Commonwealth only proved that one of the ten tablets contained methadone. He claims that the trial court "had to go beyond the evidence" to conclude that the other nine tablets contained methadone. We disagree.

In arguing that the testing of a random sample of a suspected controlled substance to identify its chemical composition is insufficient as a matter of law to establish the intent to distribute the entirety of a quantity seized, Williams presents an issue of first impression in the Commonwealth. However, as stated previously, intent can and often must be proven by circumstantial evidence. "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad v. Commonwealth, 269 Va. 451, 480, 619 S.E.2d 16, 32 (2005). When presented with circumstantial evidence, "it is within the province of the jury [or the trial court, sitting as the trier of fact,] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976). A logical extension of this rule is that when a portion of an unknown substance is tested and confirmed to be a controlled substance, it is not unreasonable for the fact finder to infer that the entire amount is the same controlled substance if the totality of the circumstances supports that inference. See United States v. Fitzgerald, 89 F.3d 218, 223 n.5 (5th Cir. 1996) ("Random sampling is generally accepted as a method of identifying the entire substance whose quantity has been measured."). On appeal, we are bound by such inferences, unless they are plainly wrong or without evidence to support them. Inge, 217 Va. at 366, 228 S.E.2d at 568.

The certificate of analysis presented by the Commonwealth contained the findings and conclusions of a forensic scientist who had examined the tablets. The scientist reported, "Visual examination determined that the physical characteristics [of all ten pills] are consistent with a pharmaceutical preparation containing Methadone." The Commonwealth introduced the tablets themselves into evidence, and the trial court was able to look closely at the tablets. The court observed that they "all appear to be the same" and noted that each pill bore identical markings. The court below inferred that the ten identical tablets that were packaged together and possessed

by Williams contained the same substance, methadone, identified in the tablet tested.  All of those circumstances support the inference reached by the trial court that all ten tablets contained the same substance as the tablet that was tested.  There is nothing in the record to indicate that such an inference is plainly wrong and, under the totality of the circumstances presented here, was clearly reasonable.  Accordingly, we will not disturb that finding on appeal.

### III.  Conclusion

For the reasons stated, the evidence presented at trial and the inferences drawn by the trial court support the trial court's conclusion that Williams' possession of cocaine and methadone was inconsistent with personal use.  Thus, the evidence was sufficient to convict Williams of possession with intent to distribute cocaine and methadone, and we affirm the decision of the trial court.

Affirmed.