COURT OF APPEALS OF VIRGINIA

Present: Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia

SHAHEIM DAMONTE MOON, SOMETIMES KNOWN AS
 SHAHEIM DAMONT'E MOON
                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 0667-22-3                    JUDGE VERNIDA R. CHANEY
                                                         JULY 11, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Shaheim Damont'e Moon of possession

with intent to distribute a Schedule I or II controlled substance, third or subsequent offense,

possession of a firearm by a convicted violent felon, and possession of a firearm while in possession

of a Schedule I or II controlled substance.[1] On appeal, Moon challenges the trial court's judgment

denying his motion to suppress evidence obtained by police during a warrantless vehicle search.

Op. Br. 3-8. Moon contends that without the firearm evidence that should have been suppressed,

the evidence was insufficient to support both firearm convictions. Moon also argues that the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The trial court granted Moon's motion to strike the evidence on related charges of
possession of ammunition by a convicted felon and eluding a police officer.

evidence was insufficient to prove that he intended to distribute a Schedule I or II controlled substance. Op. Br. 3-4, 11. For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the trial court. *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On January 19, 2021, when Officer Page of the Lynchburg Police Department made a traffic stop, the driver and sole occupant of the vehicle—Moon—parked in a convenience store parking lot and "rapidly exited the vehicle and began to walk away." Although Officer Page repeatedly instructed Moon to go back in the vehicle, Moon "took off running." Officer Page chased Moon on foot for about a block. After catching Moon, the officer handcuffed and searched him and found his driver's license. The vehicle was registered to an unidentified female, not to Moon.

When checking Moon's driver's license, Officer Page was advised that Moon had waived his Fourth Amendment rights against warrantless searches (Fourth Amendment waiver) and the waiver remained in effect. In 2015, Moon was convicted of two charges of possession with intent to distribute cocaine in addition to other felony drug and firearm convictions. Moon's 2015 conviction and sentencing order provided:

> The defendant specifically agrees to waive his Fourth Amendment right against a warrantless search for a period of 10 years from this day. The defendant agrees to consent and voluntarily submit to a warrantless search of his person, place of residence or any vehicle he is occupying, at any time of the day or night by any law enforcement officer during this period. The defendant further agrees that any evidence seized from such search shall be admissible in any hearing or trial resulting therefrom.

Given Moon's Fourth Amendment waiver, the police moved the vehicle to a nearby park and searched the vehicle and its contents. The police did not get the vehicle owner's consent to move and search the vehicle.

In searching a backpack found in the vehicle, the police found a loaded Glock .45 caliber handgun with one cartridge of ammunition in the chamber and 13 cartridges in the magazine. The police also found a credit card purchase receipt for the ammunition, which identified Moon as the purchaser. However, upon viewing the surveillance video from the store where the ammunition was purchased, Officer Page observed that a female—not Moon—purchased the ammunition.

Inside the backpack, the police also discovered a knotted plastic bag containing 21 round blue pills that appeared from the pills' markings to be oxycodone hydrochloride. The Virginia Department of Forensic Science (DFS) analyzed the pills and found that they contained fentanyl, a Schedule II controlled substance. DFS also determined that "[v]isual examination of the [pills'] physical characteristics, including shape, color and manufacturer's markings, was consistent with a Schedule II pharmaceutical preparation containing Oxycodone." The backpack search also revealed four glass jars containing marijuana, among other items. The police found no drug prescriptions in the backpack or the vehicle.

Moon moved to suppress the evidence obtained from the warrantless vehicle search on the grounds that his Fourth Amendment waiver did not authorize the police to move and search the vehicle without the third-party owner's consent. Moon did not contest the authority of police to search the vehicle at the location of the traffic stop. But Moon contended that the officers' "right to search was limited to searching the vehicle when the vehicle was stopped" and ended "[a]s soon as the vehicle [was] moved." In response, the Commonwealth argued that Moon lacked standing to assert a third party's Fourth Amendment rights. Additionally, the Commonwealth contended that pursuant to Moon's Fourth Amendment waiver, the police were authorized to search the vehicle

after they moved it to another location. The trial court found "that Mr. Moon was the exclusive occupant and had exclusive control over this vehicle at the time of the stop." The trial court also found that Moon "had waived his Fourth Amendment rights pertinent to this time period and that he had no right to assert Fourth Amendment right to any third party." Pursuant to these findings, the trial court denied Moon's motion to suppress.

At trial, Detective Hendricks of the Lynchburg Police Department's Vice/Narcotics Unit was recognized as an expert in the sale and distribution of narcotics, with specific expertise in the sale and distribution of opioids. Detective Hendricks testified that the quantity and packaging of the fentanyl pills found in the backpack were inconsistent with personal use.[2] The detective explained that a fentanyl user would have at most one or two pills and the 21 pills from the backpack had a "street value" of $630. The detective also testified that the presence of both the firearm and the drugs in the backpack was significant because a firearm is commonly used "as a tool in the drug distribution trade to protect from the violence associated with the trade." Detective Hendricks opined that the totality of the circumstances related to the fentanyl pills was inconsistent with personal use.

Officer Page testified at trial that he Mirandized and questioned Moon after he was arrested. Moon told Officer Page that the backpack found in the vehicle belonged to him. Moon also admitted that "his friend gives his marijuana to sell and he sells it from the back pack and then when it's all gone, he goes back and gets more marijuana to sell." Moon said that the pills and gun found in the backpack belonged to his friend and that Moon discovered these items in the backpack two days before he was arrested.

---

[2] The parties agreed to adopt the evidence presented during the suppression hearing as evidence for purposes of the trial.

With the trial court's permission, Moon presented a combined motion to strike and closing argument. Moon argued that the trial court should give little weight to the expert testimony that the circumstances related to the fentanyl pills were inconsistent with personal use. Moon contended that the purported expert's opinion was insufficiently "based upon interviews with five or six people who may or may not have been telling the truth," and on the officer's recollection of a single criminal case. Moon also argued that the evidence was insufficient to prove that (i) he possessed or intended to distribute the fentanyl pills, which Moon said belonged to his friend; (ii) he possessed the firearm, which Moon also said belonged to his friend; and (iii) he possessed the ammunition, which was purchased by an unidentified woman, albeit with Moon's credit card.

Following closing arguments, the trial court denied Moon's motion to strike in relevant part and found him guilty of three charged felonies: possession with intent to distribute a Schedule I or II controlled substance, third or subsequent offense, possession of a firearm by a convicted violent felon, and possession of a firearm while in possession of a Schedule I or II controlled substance. The trial court sentenced Moon to incarceration for 30 years, with 13 years suspended. This appeal followed.

ANALYSIS

*I. The trial court did not err in denying Moon's suppression motion.*

Moon contends that the trial court erred by denying his motion to suppress the evidence obtained when the police searched the vehicle he was driving pursuant to Moon's waiver of his Fourth Amendment rights against warrantless searches. Although Moon acknowledges that a 2015 sentencing order showed that his valid waiver of Fourth Amendment rights was in effect at the time of the warrantless vehicle search, Moon contends that the trial court's interpretation of his Fourth Amendment waiver was overbroad and police exceeded the waiver's scope. Specifically, Moon argues that his waiver applied only to searches of his own person or property,

- 5 -

not to the vehicle owned by a third party. In addition, Moon asserts that his waiver did not authorize the search of the vehicle after it was moved from the place where Moon had occupied it. We disagree.

Moon contends that "[n]othing in the record indicates that the Appellant knowingly and intelligently waived his right to a search of anything other than *his* person and property." Op. Br. 4. However, by the explicit terms of his Fourth Amendment waiver, Moon "agree[d] to consent and voluntarily submit to a warrantless search of . . . *any vehicle he is occupying*, at any time of the day or night by any law enforcement officer during this period." (Emphasis added). Thus, although Moon did not own the vehicle stopped by police, his Fourth Amendment waiver authorized police to search the vehicle after stopping Moon.[3] Pursuant to his Fourth Amendment waiver, Moon also "agree[d] that any evidence seized from such search shall be admissible in any hearing or trial resulting therefrom." Therefore, the trial court did not err in denying Moon's motion to suppress the evidence obtained from the vehicle search.

This Court also rejects Moon's contention that the police unlawfully searched the vehicle after it was moved and allegedly "no longer had a temporal or physical connection to the Appellant at the time of the search." Op. Br. 6. Moon contends that his Fourth Amendment waiver did not authorize the warrantless vehicle search because the vehicle "was not searched at the scene of an arrest nor was the Appellant in the vehicle at the time of the search." Op. Br. 5. On Moon's interpretation of his Fourth Amendment waiver, his consent to a warrantless search of "any vehicle he is occupying" applies only when he is inside or in physical proximity to the

---

[3] This opinion does not decide whether, in a hypothetical case, Moon's Fourth Amendment waiver would authorize police to search a vehicle owned by a third party and occupied by both the vehicle's owner and Moon. The Court's resolution of this appeal does not require the Court to resolve that hypothetical issue. *See Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015) (Virginia appellate Courts "strive to decide cases on the 'best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

- 6 -

vehicle. In rejecting this interpretation, the trial court interpreted Moon's Fourth Amendment waiver as recorded in the trial court's own sentencing order. On appeal, this Court accords deference to the trial court's interpretation of its own orders so long as that interpretation is reasonable. *Roe v. Commonwealth*, 271 Va. 453, 458 (2006). The trial court reasonably construed Moon's waiver of his Fourth Amendment right against warrantless searches and his consent to a warrantless search of "any vehicle he is occupying" to include the warrantless search of the vehicle he was driving after it was moved to a nearby park. Therefore, the trial court did not abuse its discretion in interpreting Moon's Fourth Amendment waiver and did not err in denying Moon's suppression motion.[4]

*II. The evidence was sufficient to prove Moon's intent to distribute the fentanyl pills.*

A. Standard of Review

Moon contends that the evidence was insufficient to prove that he intended to distribute the 21 fentanyl pills found in a knotted plastic bag in his backpack. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

---

[4] Moon's contention that the evidence was insufficient to support both firearm convictions is predicated on his claim that the evidence obtained from the vehicle search should have been suppressed. Having determined that the trial court did not err in denying Moon's suppression motion, this Court concludes that the lawfully admitted evidence is sufficient to sustain the firearm convictions.

(2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

This Court's deference to the trial court's factual findings stems, in part, from the trial court's "opportunity to observe the witnesses' testimony and demeanor." *Lopez v. Commonwealth*, 73 Va. App. 70, 82 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

B. <u>Sufficient Evidence of Moon's Intent to Distribute the Fentanyl Pills</u>

Although not challenging the sufficiency of the evidence to prove that he possessed the fentanyl pills in his backpack, Moon argues that the Commonwealth failed to prove that he intended to distribute the drugs. "Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances." *Secret*, 296 Va. at 228 (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)). "Absent a direct admission by the defendant, intent to

- 8 -

distribute must necessarily be proved by circumstantial evidence." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc). "When the proof of intent to distribute narcotics rests upon circumstantial evidence, . . . quantity, alone, may be sufficient to establish such intent if it is greater than the supply ordinarily possessed for one's personal use." *Dukes v. Commonwealth*, 227 Va. 119, 122 (1984). "Expert testimony, usually that of a police officer familiar with narcotics," may be used "to prove the significance of the weight and packaging of drugs regarding whether it is for personal use." *Shackleford v. Commonwealth*, 32 Va. App. 307, 327 (2000). In addition, "[w]e have recognized that the unique, simultaneous possession of a combination of disparate drugs can be indicative of the possessor's intent to distribute." *Scott v. Commonwealth*, 55 Va. App. 166, 174 (2009). Finally, "firearms" are "recognized as tools of the drug trade, the possession of which [is] probative of intent to distribute." *Askew v. Commonwealth*, 40 Va. App. 104, 108 (2003).

The record supports the trial court's finding that Moon intended to distribute the fentanyl pills found in his backpack. The backpack, which Moon acknowledged was his, contained 21 fentanyl pills with a street value of $630. Moon also admitted that he used the same backpack to distribute marijuana and he knew the pills were in the backpack. At trial, Detective Hendricks opined as an expert in the sale and distribution of narcotics that the quantity, value, and packaging of the fentanyl pills were "inconsistent with personal use." Moon's intent to distribute the fentanyl pills was further established by the evidence of other drugs and a firearm in his backpack. That evidence combined with Detective Hendricks's expert testimony provided compelling proof of Moon's intent. *Cf. Askew*, 40 Va. App. at 111 (holding evidence proved defendant's intent to distribute where he possessed a "tool of the drug trade" and more than seven grams of individually-packaged crack cocaine with a $700 street value, where a drug expert opined that those circumstances were inconsistent with personal use). Therefore, the trial

court did not err in convicting Moon of possession with intent to distribute a Schedule I or II controlled substance.

## CONCLUSION

The trial court did not err in denying Moon's motion to suppress and the evidence was sufficient to support the trial court's findings of guilt for all of Moon's convictions. Accordingly, this Court affirms the trial court's judgment.

*Affirmed*.